IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER (540) 325-0181 | Case No. 5:21-mj-00035 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Andrew Parr, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number (540) 325-0181, (the "Target Cellular Device"), which is described in Attachment A.

2.  I am a Deputy United States Marshal with the United States Marshals Service and have been for thirteen years. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am charged with enforcing federal laws in all jurisdictions of the United States, its territories, and possessions. I am currently assigned to the Western District of Virginia, Fugitive Operations Section for the USMS. I have conducted criminal and fugitive investigations throughout my career. I have been the affiant on numerous search warrants regarding the tracking and locating of federal fugitives based on their use of cellular phones.

Throughout my career, I have encountered numerous methods that fugitives have used to hinder law enforcement efforts to track their whereabouts including, but not limited to, turning the phones on and off when not in use, having the phones subscribed in family members or friends' names, and carrying and using multiple cellular phones on their person.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      One purpose of applying for this warrant is to determine with precision the Target Cellular Device's location.  However, there is reason to believe the Target Cellular Device is currently located somewhere within this district because data obtained for the Target Cellular Device indicated that it was normally to be found in this district.  Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued.

5.      Based on the facts set forth in this affidavit, there is probable cause to believe that Milton Canales-Molina, also known as "Milton Marin Caceres-Molina" and "El Chupa," (hereinafter, "CANALES") has violated Title 8, United States Code, Section 1326(a). CANALES was charged with this crime on May 25, 2021 and is the subject of an arrest warrant on that same date.  There is also probable cause to believe that the Target Cellular Device's location will assist law enforcement in arresting CANALES, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

6. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## **PROBABLE CAUSE**

7. The United States is conducting a criminal investigation of CANALES regarding possible violations of Title 8, United States Code, Section 1326(a). A review of CANALES's immigration history indicates that on or about December 16, 2009, CANALES was ordered removed the United States after having been found to be present in the United States illegally. Pursuant to the removal order, CANALES was then deported to El Salvador on or about February 9, 2010. Prior to his removal from the United States on or about February 9, 2010, CANALES was fingerprinted by law enforcement officers.

8. On or about November 16, 2019, CANALES was arrested in Brookhaven, New York by the Suffolk County Police Department. CANALES was charged with false personation in violation of New York State law and was fingerprinted after his arrest.

9. The fingerprints taken from CANALES in connection with his arrest on November 16, 2019 were compared with the fingerprints associated with his 2010 removal. A United States Deportation Officer trained in and certified by the Federal Bureau of Investigation in fingerprint analysis and comparison determined that the fingerprints were made by one and the same individual.

10.   A search of immigration records revealed that there exists no request by CANALES for permission from either the United States Attorney General or the Secretary of the Department of Homeland Security to re-enter the United States after removal.

11.   On May 25, 2021, a federal grand jury, sitting in the Eastern District of New York, returned an indictment (the "Indictment") in the case of the <u>United States v. Milton Canales-Molina</u>, 21-CR-284 (JS).  The Indictment charged CANALES with illegal reentry in violation of Title 8, United States Code, Section 1326(a).  A warrant for the CANALES's arrest was signed on that same day by the Honorable Steven I. Locke, United States Magistrate Judge for the Eastern District of New York.  CANALES is also wanted in El Salvador for Aggravated Homicide.  The warrant from El Salvador is for the name "Milton Marin Caceres-Molina, also known as 'El Chupa.'"  As of the date of this application, CANALES remains at-large and a fugitive from the law.

12.   In May 2021, members of the Task Force, attempting to identify active social media accounts belonging to CANALES, located his Facebook account with his user name "milton.caceres.77128," (the "Facebook Account).  The pictures below are screen shots that are available to members of the public from the Facebook Account.

  

As can be seen above, one of the photographs that is described as a profile picture was uploaded recently to the Facebook Account on August 9, 2021 at 8:17 p.m. The profile picture matches photographs of CANALES that were taken when he was previously removed from the United States on February 9, 2010 and when he was previously arrested in Brookhaven, New York in 2019. Furthermore, the name of the profile picture matches the name of one of CANALES's aliases. In addition, a close view of the profile picture shows that the photograph was taken in the vicinity of the intersection of Meadowlark Court and Meadowbrook Place in Winchester, Virginia.

13. Based on the information above regarding the Facebook Account, on August 18, 2021, the Honorable Steven L. Tiscione, United States Magistrate Judge for the Eastern District of New York issued a Search Warrant to Facebook to provide law enforcement with physical location information associated with the Facebook Account. <u>See</u> 21-MJ-965. The Honorable

Tiscione also issued an Order authoring the use of a pen register and trap and trace device for the Facebook Account. See 21-MC-2414.

14. On August 25, 2021, at 20:44:49 UTC, the Facebook Account accessed a nonpublic IP address, IPV6 2607:fb90:a8a7:9635:a508:4566:4e1f:1ef1 (the "IP Address"), which is an IP address registered to T-Mobile[1], a wireless telephone service provider.

15. On August 27, 2021, the Honorable James M. Wicks, United States Magistrate Judge for the Eastern District of New York issued a Search Warrant to T-Mobile for information regarding the location of the cellular telephone using the IP Address. See 21-MJ-1006.

16. According to a representative from Sprint/T-Mobile, the cellular telephone using the IP Address is the Target Cellular Device. On or about August 31, 2021, Sprint/T-Mobile began providing location information for the Target Cellular Device to law enforcement. From on or about August 31, 2021 through the date of this application, Sprint/T-Mobile reported that the Target Cellular Device, every night between the hours of 6:30 p.m. and 6:00 a.m., was located within 3,035 meters of the vicinity of Greenwood Road and Grocery Avenue, in Winchester Virginia. This location is within one mile of the vicinity of Meadowlark Court and Meadowbrook Place in Winchester, Virginia, the location from where the photograph was taken of CANALES's profile picture on the Facebook Account, which was uploaded on August 9, 2021.

---

[1] In 2020, T-Mobile merged with the Sprint Corporation, another wireless telephone service provider.

## MANNER OF EXECUTION

17. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

18. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

19. The investigative device may interrupt cellular service of phones or other cellular devices within its range. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its range. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other

than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and [continue to] flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

23.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

24.     A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

## OATH

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

*s/Andrew Parr*
Andrew Parr, Deputy United States Marshal
United States Marshals Service

Received by reliable electronic means and sworn and attested to by telephone on this 14th day of September 2021.

_____
JOEL C. HOPPE
UNITED STATES MAGISTRATE JUDGE

9

## **ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number (540) 325-0181, whose wireless provider is Sprint/T-Mobile.

## ATTACHMENT B

Pursuant to an investigation of Milton Canales-Molina, also known as "Milton Marin Caceres-Molina" and "El Chupa," for a violation of Title 8, United States Code, Section 1326(a), this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).